UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT JAMES BOULAY,        : | |
|     Plaintiff,                      : | CIVIL ACTION NO.: |
|                                              : | |
| v.                                              : | 3:15-cv-1251 (VLB) |
|                                              : | |
| CAPTAIN RIVERA, in his official      : | |
| and individual capacity, et al.,        : | September 15, 2015 |
|     Defendants.                    : | |

## INITIAL REVIEW ORDER

Plaintiff Robert James Boulay, pro se and incarcerated at the Cheshire Correctional Institution in Cheshire, Connecticut, brings this complaint pursuant to 42 U.S.C. § 1983. The complaint, which is dated August 9, 2015, names Defendants Captain Rivera, Captain Salius, Lieutenant Fleming, Correctional Officer Bard, Correctional Officer Miller, Correctional Officer Malanson, Correctional Officer Laprade, Warden Chapdelaine, Dr. Coleman, and Lieutenant Mahoney in both their official and individual capacities. The Court has already granted Boulay's motion to proceed *in forma pauperis*. Boulay moves for appointment of counsel. For the following reasons, the Court DISMISSES all official capacity claims, allows the remaining individual capacity claims to proceed, and DENIES the motion for appointment of counsel without prejudice to refiling at a later period in the litigation.

**Factual Background**

Boulay brings this civil rights action against Defendants in both their individual and civil capacities and seeks only monetary relief.  His complaint contains the following allegations, which are assumed to be true.  Boulay suffers from PTSD, depression, anxiety, and anti-social personality disorder.  On April 15, 2015, while confined at the MacDougall-Walker Correctional Institution, Defendants Rivera, Salius, Fleming, Bard, Miller, Malanson, and Laprade "caused and inflicted" painful bruises on his ribs and bruising and swelling on his forehead.  Boulay also experienced burns to his eyes from exposure to a chemical agent.  Boulay never attempted to resist but brought him to the ground.  These defendants attempted to conceal their actions by pausing the handheld video recording and delaying immediate treatment for the injuries.

In the incident report, Defendant Rivera stated that he deployed a single second burst of the chemical agent.  However, Defendant Rivera deployed bursts lasting several seconds into each of Boulay's eyes after he had been restrained.  Boulay was not properly decontaminated following the incident.  Although he was barely able to walk, the defendants involved in this incident brought Boulay from the Walker building to the MacDougall building and placed him on in-cell restraint status.  Because the tether between his wrists and ankles was too short, Boulay was unable to stand erect or properly relieve himself.  He was left on in-cell restraints for 22 hours.

2

The following day, on April 16, 2015, Boulay was allowed to shower and placed in a cell where his injuries were documented. No treatment was provided. Boulay was instructed to submit a sick call request for treatment of his injuries. Over the following days, he was assigned different cellmates and moved to different cells. On April 21, 2015, Boulay asked that his cellmate be removed because Boulay's mental state was regressing. Boulay cut his wrists with a spork and threw a cup of beans at the cell window.

Following this incident, Defendant Mahoney returned the plaintiff to in-cell restraints for 48 hours. This time, Boulay was naked and again was unable to relieve himself properly and was required to eat and sleep in this condition. Defendant Coleman, a doctor, approved the placement. Boulay refused to eat. On April 23, 2015, Defendant Coleman told Boulay that he would have to start eating if he wanted the restraints removed. Defendant Coleman also agreed to return Boulay's television to him. The restraints were applied too tightly and cut into Boulay's wrists.

A nurse checked the restraints and said they were appropriate. After observing the injuries to the Boulay's wrists, however, she agreed to speak to the custody officers. Defendant Mahoney returned with a different nurse, removed the restraints, and treated the cuts. Boulay was allowed a shower and taken to a different cell. He was not assigned a cellmate for three days. Defendant Coleman and two custodial officers spoke with Boulay regarding a treatment plan which included return of his television. Boulay rejected the offered plan and asked to

3

speak to the state police and a lawyer or victim's advocate. His request was denied. Boulay returned to general population the following day, but sanctions prevented him from contacting his family. Boulay did not see a doctor until May 21, 2015. As a result of this incident, Boulay has required higher doses of mental health medication as well as narcotic pain and nerve medication as a result of an exacerbated back injury.

## DISCUSSION

### I. Initial Review

This Court must review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Upon review, this Court must dismiss the complaint, or any portion thereof, if the complaint fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b). However, "[a] *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks and alterations omitted). An amended complaint is rightfully dismissed when it fails to cure the defects noted in an initial review order. *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (affirming dismissal without leave to amend of pro se complaint for failure to state a claim because plaintiff did not fix defects noted in initial dismissal order granting leave to amend).

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When reviewing a complaint for facial plausibility, a district court must "accept[ ] all factual allegations as true and draw[ ] all reasonable inferences in favor of the plaintiff." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011).  Courts should read a pro se complaint with "special solicitude" and interpret the complaint "to raise the strongest claims that it suggests." *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks and alterations omitted).

A. *Official Capacity Claims*

Boulay sues Defendants in both their individual and official capacities but seeks only for monetary relief.  The Eleventh Amendment divests federal courts of subject-matter jurisdiction over any claims for monetary damages against a state official acting in his official capacity unless the state has waived this immunity or Congress has enacted a valid override.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Section 1983 does not abrogate state sovereign immunity.  *See Quern v. Jordan*, 440 U.S. 332, 341-45 (1979).  "The State of Connecticut has not waived its Eleventh Amendment immunity from suit under 42 U.S.C. § 1983." *Gyadu v. Appellate Court*, 2009 WL 5110842, at *3 (D. Conn. Dec. 17, 2009) (citing cases therein).  New allegations cannot cure this defect.

5

Accordingly, all claims against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### B. Individual Capacity Claims

Boulay alleges that Defendants Rivera, Salius, Fleming, Bard, Miller, Malanson, and Laprade used excessive force against him by taking him to the ground, inflicting bruising and swelling, and deploying a chemical agent while he was restrained; Defendant Mahoney used excessive force by applying in-cell restraints for 48 hours following Boulay's suicide attempt; all defendants were deliberately indifferent to his medical needs by failing to provide proper medical treatment; and Defendants Mahoney and Coleman were deliberately indifferent to his conditions of confinement, which deprived him of life's basic necessities.

Boulay also includes Warden Chapdelaine as a defendant. Because Boulay does not allege that Warden Chapdelaine directly participated in the incidents involved in the incident, the Court assumes that he is asserting a claim for supervisory liability. To state a claim for supervisory liability, a plaintiff must allege "personal involvement," i.e.:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

6

*Grullon*, 720 F.3d at 139 (quotation marks and emphasis omitted).  A plaintiff also must demonstrate a causal link between the actions of the supervisory official and his injuries.  *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).  Boulay attached to his complaint a grievance in which he states that he saw Warden Chapdelaine but she referred him to a captain rather than taking action.  He further states that she was aware that he had not received any medical attention but did not ensure that he did so.  As this is sufficient to allege that Warden Chapdelaine was aware of his injuries and failed to take action to remedy them, the claims against Warden Chapdelaine will proceed at this time.

II.     <u>Motion for Appointment of Counsel</u>

Boulay seeks appointment of pro bono counsel in this action pursuant to 28 U.S.C. § 1915.  When ruling a motion for appointment of counsel, a court "should first determine whether the indigent's position seems likely to be of substance."  *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986).  A court should then consider secondary factors, such as "the indigent's ability to investigate the crucial facts, . . . the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination."  *Id.* at 61–62.  Although the Second Circuit has rejected a policy of appointing counsel only after a plaintiff's claim has survived a motion to dismiss, it has cautioned against the routine appointment of counsel.  *Hendricks v. Coughlin*, 114 F.3d 390, 392–93 (2d Cir. 1997).

**Appointment of counsel would be premature at this time. The case does not present complex legal issues and the factual support needed to move these claims forward will not be difficult to access: the case involves well-established legal principles concerning the Eighth Amendment, the events concern a short and discrete time period, Boulay states that there is evidence of switched-off video tape (which the State is required to preserve and turn over during discovery), Boulay states that some of his injuries were documented, and Boulay, who has first-hand knowledge of what happened, can provide affidavits in support of his allegations (and although it's unclear, perhaps affidavits from other prisoners with first-hand knowledge of all or part of these events). Moreover, Boulay has filed a lucid complaint, which further supports a finding that he will be able to continue to litigate without counsel. Accordingly, the motion is DENIED without prejudice. If at a later time the case becomes too difficult for Boulay to proceed pro se, the Court will reconsider its ruling.**

## CONCLUSION

In accordance with the foregoing analysis, the court enters the following orders:

(1)    All claims against the defendants in their official capacities are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(2).

(2)    The Clerk shall verify the current work address of each defendant with the Department of Correction Office of Legal Affairs, and mail a waiver of service of process request packet to each defendant at the confirmed address

**within twenty-one (21) days from the date of this Order. The Clerk shall report to the court on the status of that waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).**

**(3)     The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.**

**(4)      The defendants shall file their response to the Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the waiver form is sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.**

**(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this Order. Discovery requests need not be filed with the court.**

**(6)     All motions for summary judgment shall be filed within eight months (240 days) from the date of this Order.**

**(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.**

**If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.**

**(8)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.**

**(9) The plaintiff's motion for appointment of counsel is DENIED without prejudice to refiling.**

**IT IS SO ORDERED.**

             /s/             
Vanessa L. Bryant
United States District Judge

**Dated at Hartford, Connecticut, September 15, 2015.**